United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KEN ARREDONDO,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br><br>    Defendant. | Case No. 18-CV-04262-LHK<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 13, 14 |

Ken Arredondo ("Arredondo") appeals the final decision of the Commissioner of Social Security ("the Commissioner") denying Arredondo's application for disability insurance benefits under Title II of the Social Security Act. Before the Court is Arredondo's motion for summary judgment, ECF No. 13 ("Mot."), and the Commissioner's cross-motion for summary judgment, ECF No. 14 ("Opp."). Having considered the parties' briefs, the relevant law, and the record in this case, the Court hereby DENIES Arredondo's motion for summary judgment and GRANTS the Commissioner's cross-motion for summary judgment.

# I. BACKGROUND

## A. **Arredondo's Age, Educational and Vocational Background, and Claimed Disability**

1

Case No. 18-CV-04262-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

1    Arredondo was born in 1968. Administrative Record ("AR") 417. He has a high school education. AR 460. He completed vocational training as an ultrasound technician in 1999. *Id.* From 2000 to 2014, Arredondo worked as an ultrasound technician. AR 461. He stopped work in April 2014, when he began medical leave. AR 280-83. In his application for disability benefits, Arredondo alleged that he became disabled on April 8, 2014 because of a slew of physical and psychiatric ailments. AR 283, 422. In particular, Arredondo suffers from back-related ailments such as lumbar bulges, nerve impingement, spinal stenosis, as well as arthritis in his legs due to a congenital defect. AR 283, 422. Moreover, Arredondo suffers from depression and bipolar disorder. AR 283. Additional facts are discussed as necessary in the analysis.

B. **Procedural History**

Arredondo filed an application for disability insurance benefits in December 2014. AR 417. Arredondo alleged that he became disabled on April 8, 2014. AR 417. A hearing was held before an administrative law judge ("ALJ") in April 2017. AR 275. Arredondo was represented by an attorney. AR 275. Arredondo testified at the hearing. AR 280-300. No medical expert was called. An impartial vocational expert ("VE") testified. AR 300-06.

In June 2017, the ALJ issued a written decision that denied Arredondo's disability application. AR 33. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied review on June 20, 2018. AR 1-6.

On July 16, 2018, Arredondo filed a complaint in this Court seeking review of the Commissioner's decision. ECF No. 1. On October 17, 2018, the Commissioner filed an answer. ECF No. 11. On November 14, 2018, Arredondo filed a motion for summary judgment. ECF No. 13 ("Mot."). On December 12, 2018, the Commissioner filed a cross-motion for summary judgment and an opposition. ECF No. 14. On December 24, 2018, Arredondo filed a reply and an opposition to the Commissioner's cross-motion for summary judgment. ECF No. 15 ("Reply").

II.   **LEGAL STANDARD**

A. **Standard of Review**

Case No. 18-CV-04262-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

This Court has the authority to review the Commissioner's decision to deny benefits. 42 U.S.C. § 405(g). The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Morgan,* 169 F.3d at 599. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins*, 466 F.3d at 882).

B. **Standard for Determining Disability**

An individual is considered disabled for the purposes of Title II of the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"ALJs are to apply a five-step sequential review process in determining whether a claimant qualifies as disabled." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). At step one, the ALJ determines whether the claimant is performing "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. If not, the analysis proceeds to step two. At step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement. 20 C.F.R.

3

Case No. 18-CV-04262-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

§ 404.1520(a)(4)(ii). If not, the claimant is not disabled. If so, the analysis proceeds to step three. At step three, the ALJ determines whether the claimant's impairment or combination of impairments meets or equals an impairment contained in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is disabled. If not, the analysis proceeds to step four. At step four, the ALJ determines whether the claimant has the residual functional capacity ("RFC") to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled. If not, the analysis proceeds to step five. At step five, the ALJ determines whether the claimant can perform other jobs in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. If not, the claimant is disabled.

"The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray*, 554 F.3d at 1222. "The Commissioner can meet this burden through the testimony of a vocational expert or by reference to the Medical Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002).

### III. DISCUSSION

Arredondo asserts that the ALJ committed four main errors. First, Arredondo argues that the ALJ erred by failing to provide adequate reasons for rejecting the opinion of treating psychiatrist Dr. Bettina Mutter. Second, Arredondo argues that the hypothetical propounded to the VE did not describe all of Arredondo's limitations. Third, Arredondo asserts that the ALJ's reasons for rejecting his testimony are inadequate. Finally, Arredondo argues that remand is warranted so that the ALJ can consider the opinions of treating psychiatrist Jonathan Lichtmacher and psychologist Marlen Kanagui-Munoz. The Court first summarizes the relevant evidence and the ALJ's opinion, and then the Court assesses whether the ALJ erred.

#### A. Relevant Evidence

The Court first discusses the evidence concerning Arredondo's alleged psychological impairments, which includes a history of depression, anxiety, and bipolar disorder. Then, the

4

Case No. 18-CV-04262-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Court discusses Arredondo's alleged history of alcoholism. Lastly, the Court discusses Arredondo's alleged physical impairments.

### 1. Psychological Impairments

#### a. Kaiser Fresno Records

In May 2011, Arredondo was referred for psychological testing at Kaiser in Fresno, California to rule out a diagnosis of attention deficit hyperactivity disorder ("ADHD") after having noticed an increase in his hyperactivity since he became sober in December 2010. AR 550, 555. The testing included a comprehensive background of Arredondo's psychological history, which disclosed two hospitalizations for suicidal thoughts and intent. AR 552. Arredondo's first hospitalization in July 2010 was voluntary, and his second hospitalization in October 2010 was involuntary. *Id.* The testing at Kaiser supported a diagnosis of Bipolar 2 disorder, alcohol dependence, cannabis abuse, and occupational, financial, and relationship problems. AR 555.

#### b. Treating Physician Dr. Gregory Copeland

On April 18, 2013, Arredondo was seen by Dr. Gregory Copeland, who noted that Arredondo was there to "continue . . . management of several ongoing issues including depression and anxiety." AR 588. Arredondo was prescribed Celexa and Xanax for his depression and anxiety, respectively. He was also prescribed Wellbutrin for depression. AR 631. Arredondo continued to be seen at Copeland Medical Group for maintenance of his depression and anxiety until April 15, 2014, when Dr. Copeland referred Arredondo to a psychiatrist. AR 644.

#### c. Treating Psychiatrist Dr. Joseph Alimasuya

On April 22, 2014, Arredondo began to see Dr. Joseph Alimasuya, a psychiatrist. Dr. Alimasuya's initial intake appointment notes stated that the "[e]xamination of Mr. Arredondo reveals no serious mental status abnormalities. . . . He exhibits neither depression nor mood elevation." AR 752. Dr. Alimasuya wrote of Arredondo: "[c]ognitive functioning and fund of knowledge is [sic] intact and age appropriate. Short and long term memory are intact . . . . Social judgment appears intact. There are no signs of hyperactive or attentional difficulties. Mr.

Arredondo's behavior in the session was cooperative and attentive with no gross behavioral abnormalities." AR 944. Nonetheless, Dr. Alimasuya continued the regimen of Celexa and Wellbutrin for depression. AR 752-53. In a subsequent visit, however, Dr. Alimasuya noted that Arredondo's "[s]peech and thinking appear slowed by depressed mood. His affect is constricted." AR 755. Likewise, on July 25, 2014, Dr. Alimasuya wrote that "Mr. Arredondo presents as glum, attentive, fully communicative, casually groomed, defensive, over weight, and appears anxious. His speech is mumbled[.] He appears to be near tears. He appears downcast. There are signs of severe depression. His affect is congruent with mood. . . . Social judgment appears to be poor. There are signs of anxiety." AR 766.

### d. Treating Psychologist Dr. Claudia Cerda

Dr. Claudia Cerda, along with her staff (collectively, "Dr. Cerda"), provided Arredondo with psychological counseling from April 21, 2014 until February 24, 2015. AR 946, 960. When Arredondo first saw Dr. Cerda, Arredondo presented as tearful and with signs of moderate depression. AR 947. He was diagnosed with depression and anxiety. *Id.* On subsequent visits, Arredondo's diagnosis remained the same (depression and anxiety).

### e. Social Security Psychological Evaluation

On April 29, 2015, psychologist Dr. Ute Kollath performed a mental status evaluation of Arredondo for the purpose of establishing disability status. AR 904. Dr. Kollath diagnosed Arredondo with depression. AR 907. Dr. Kollath wrote of Arredondo: "He had no difficulty following simple and moderately complex directions. His history and clinical presentation is not indicative of a neurocognitive disorder. He should have no functional disruption due to a cognitive disorder." AR 906. In terms of his evaluation of Arredondo's work-related abilities, Dr. Kollath found: Arredondo's ability to "withstand the stress of a routine workday" was "mildly impaired"; his ability to "adapt to changes, hazards, or stressors in [a] workplace setting" was moderately impaired; and his ability to "maintain adequate pace or persistence to perform . . . [c]omplex tasks" was mildly impaired. AR 907. Otherwise, Dr. Kollath found Arredondo's abilities—for

instance, his ability to "follow complex/detailed instructions," "to adapt to changes in job routine," "to interact appropriately with co-workers, supervisors, and the public on a regular basis"—to be unimpaired. *Id.*

### a. State Agency Medical Providers

Arredondo's medical records were examined by two state agency medical providers, physician Dr. F. Mateus and psychologist Dr. Nicole Mannis. Dr. Mateus diagnosed Arredondo with depression, but wrote that "his psych. impairment is not severe" and that he only had "mild impairment due to depression." AR 318.

On October 10, 2015, Dr. Mannis wrote that Arredondo's affective disorder was not severe, and that "with continued [treatment] and abstinence from alcohol, [claimant's] depression/anxiety is expected to be non-severe within twelve months." AR 333.

### b. Kaiser Richmond Records

On August 20, 2015, Arredondo saw Dr. Robert Fusco at Kaiser in Richmond, California. Arredondo described symptoms including insomnia, "sometimes for three days at a time." AR 928. He does not realize that he has not slept. *Id.* However, there are also periods where he sleeps too much and feels depressed, cries, and feels like he cannot get anything done. *Id.* Dr. Fusco diagnosed Arredondo with bipolar 1 disorder with rapid cycling, and wrote that Arredondo "has a long history of bipolar disorder, confirmed by psych testing. . . . It may be that with the lack of effective treatment over the past few years, his bipolar disorder has evolved into a more virulent, rapid-cycling form." AR 931. Dr. Fusco prescribed Depakote and continued the regimen of Celexa. AR 932.

Arredondo saw Dr. Fusco until February 1, 2016, when he began treatment under the care of Dr. Bettina Mutter because Dr. Fusco went on a leave of absence. AR 1297. Arredondo reported to Dr. Mutter that since beginning the Depakote, his manic periods no longer lasted as long as 4-5 nights; instead, they lasted 1-2 nights. *Id.* However, he reported that his depressive episodes had gotten more severe, and when depressed, he slept most of the time and has difficulty

7

Case No. 18-CV-04262-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

doing anything else. AR 1298. He also complained that he was highly nervous. *Id.* In addition to Arredondo's other medications, Dr. Mutter started him on Abilify. AR 1303. In his second consultation with Dr. Mutter on July 18, 2016, Arredondo reported an improvement in his mood and depression since beginning Abilify, but still reports "frequent mood 'cycling,' emotional flooding, frequent crying, difficulty concentrating, difficulty getting along with others, [and a] high level of anxiety." AR 1506. Dr. Mutter wrote that Arredondo's "ability to function is currently severely impaired by his mood symptoms, as well as anxiety, and likely underlying ADHD." AR 1508. Dr. Mutter also completed a worksheet titled "Medical Assessment of Ability to do Work-Related Activities (Mental)," in which Dr. Mutter gave Arredondo the lowest possible rating for his ability to complete such tasks as "interact with supervisors," "deal with the public," "relate to co-workers," or "follow work rules." AR 1504. Dr. Mutter explained: "Patient has serious limitations due to multiple deficits in area of mood, anxiety, and attention/concentration. Also lacks pragmatic social/emotional skills." *Id.*

After this second encounter with Dr. Mutter, Arredondo began to see Dr. Jonathan Lichtmacher because Dr. Mutter left the Kaiser clinic. AR 1508, 1566. On August 18, 2016, Arredondo had his first appointment with Dr. Lichtmacher. Dr. Lichtmacher maintained the diagnosis of bipolar 1 disorder. AR 1571. Arredondo also began to see Kaiser psychologist Dr. Marlen Kanagui-Munoz, who also diagnosed him with bipolar 1 disorder. AR 1558.

c. VE Testimony

At the hearing before the ALJ, a VE testified. AR 300. In the ALJ's hypothetical, the ALJ described Arredondo's mental limitations as follows:

> The individual is able to work – or rather can understand, remember, can carry out simple and routine tasks. With the ability to adapt to routine workplaces changes. The individual can frequently get along with coworkers and respond to criticisms from supervisors without exhibiting behavioral extremes such as anger, outbursts, or leaving the worksite.

AR 303-04.

The VE found that the hypothetical individual with those mental limitations is able to

8
Case No. 18-CV-04262-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

perform various jobs such as an information clerk or an order clerk. AR 304. The VE also testified that if the hypothetical person is "off-task 10 percent of the time due to their psychological symptoms," there would be no work for that person. AR 305.

In addition, Arredondo's attorney brought up Dr. Mutter's evaluation in which she wrote that Arredondo would have "poor to no ability to interact with coworkers, the public, or supervisors." *Id.* The VE conceded that in that case, the hypothetical person could not perform any of the jobs mentioned.

### 2. Alcoholism

There are contradictions in the record regarding Arredondo's sobriety. The ALJ noted that Arredondo had a long history of alcohol abuse. AR 30. On April 29, 2015, Arredondo reported to Dr. Kollath that he last drank alcohol in approximately April 2014. AR 928. However, on August 20, 2015, he told Dr. Fusco at Kaiser in Richmond, California, that he had been sober for the past two years. AR 928.

### 3. Physical Impairments

Arredondo has degenerative disc disease of the lumbar spine. AR 24. Moreover, Arredondo has been diagnosed with rule out DeQuervain's syndrome, which affects his use of his left hand. *Id.* However, the Court does not discuss Arredondo's physical impairments at length because they are not the subject of the summary judgment motion.

### B. **The ALJ's Opinion**

The ALJ filed a written decision denying Arredondo's claim on June 21, 2017. AR 33. The ALJ applied the five-step evaluation process for determining disability described in 20 C.F.R. § 404.1520. At step 1, the ALJ found that Arredondo had not engaged in substantial gainful activity since April 8, 2014. AR 24. At step 2, the ALJ found that Arredondo had the following severe impairments: degenerative disc disease of the lumbar spine and an affective disorder. *Id.*

At step 3, the ALJ found that none of Arredondo's impairments or combination of impairments met or medically equaled any impairment listed in 20 C.F.R. Part 404, Subpart P,

Appendix 1. AR 26. Specifically, the ALJ found that "[t]he severity of the claimant's mental impairment does not meet or medically equal the criteria of listing 12.04," and that Arredondo did not meet the "paragraph B" criteria, which requires that the mental impairment "must result in at least one extreme or two marked limitations in a broad area of functioning." AR 27. The ALJ found that according to Dr. Alimasuya's records, Arredondo has no difficulty in understanding, remembering, or applying information. *Id.*

In interacting with others, the ALJ found that Arrendondo had mild limitations. The ALJ cited Dr. Kollath's examination, during which Arredondo "presented in a friendly and cooperative manner. . . . He interacted appropriately with [Dr. Kollath] and office staff throughout the evaluation and he was not observed to display bizarre behavior." *Id.*

Regarding concentrating, persisting, and maintaining pace, the ALJ found that Arredondo had only mild limitations. *Id.* The ALJ noted that although Arredondo made allegations of a history of ADHD, this was belied by his highly-skilled past work history as an ultrasound technician. *Id.* Moreover, per Dr. Alimasuya's records, medication was proven effective. *Id.*

In adapting or managing oneself, the ALJ found that Arredondo experienced moderate limitations. *Id.* However, the ALJ noted that Arredondo was able to adjust to some domestic issues by obtaining medical insurance, renting his house, and selling his possessions. *Id.* Moreover, Arredondo's symptoms were exacerbated by "lapses in medication . . . [and] seeing different medical sources, which increased symptoms that would otherwise be managed well with more consistent medication compliance as shown in Dr. Alimasuya's records." AR 27-28.

Before moving to step 4, the ALJ assigned the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he can lift or carry 10 pounds occasionally and less than 10 pounds frequently, sit for up to 6 hours, stand and walk 4 hours in an 8-hour work day, with normal breaks. He should never climb ladders, ropes or scaffolds and he is able to occasionally climb ramps and stairs. He can frequently stoop, kneel, balance, crouch, and crawl. He is able to understand, remember and carry out simple and routine tasks with the ability to adapt to routine workplace changes. He can

10
Case No. 18-CV-04262-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

> frequently get along with coworkers and respond to criticism from supervisors without exhibiting behavioral extremes such as anger outbursts or leaving the worksite.

AR 28.

In coming to this conclusion, the ALJ summarized Arredondo's subjective symptom testimony and medical records. AR 28-31. In particular, the ALJ cited the records and findings of Drs. Kollath, Mannis, Mateus, and Mutter. The ALJ gave great weight to Dr. Kollath's finding that Arredondo's alleged psychological issues were mild because Dr. Kollath's records are "consistent with the record as a whole and supported by an explanation." AR 31. The ALJ gave some weight to the state agency medical providers who opined that Arredondo would improve with continued medical treatment and abstinence from alcohol. *Id.* The ALJ gave Dr. Mutter's opinion very little weight because she "did not appear to have a longitudinal record of treating the claimant per his testimony and her dire assessments are unexplained and inconsistent with the claimant's responsiveness to treatment absent alcohol and with medication compliance." *Id.*

Moreover, the ALJ found that Arredondo's records regarding his alcoholism was contradictory. In April 2015, Arredondo reported to Dr. Kollath that he last drank 12 months ago, whereas Kaiser Richmond's records show that on August 20, 2015, Arredondo claimed he had been sober for 2 years. AR 30.

At step 4, the ALJ found that Arredondo could not perform his past relevant work. AR 31. At step 5, the ALJ found that, considering Arredondo's age, education, work experience, and RFC, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id.* Relying on the VE testimony, the ALJ found that Arredondo was capable of performing the requirements of representative occupations as semiconductor loader, information clerk, and order clerk. AR 32. Accordingly, the ALJ determined that Arredondo was not disabled for the purposes of the Social Security Act. *Id.*

C. **Analysis**

As noted above, Arredondo asserts that the ALJ committed a range of harmful errors, including failing to provide adequate reasons for rejecting the opinion of Dr. Mutter, failing to

11

propound to the VE all of Arredondo's limitations, and rejecting Arredondo's testimony by using inadequate reasons. Moreover, Arredondo believes that this Court should remand to the ALJ to consider the opinions of Drs. Lichtmacher and Kanagui-Munoz. The Court addresses each of these arguments in turn.

### 1. Whether the ALJ Improperly Rejected Dr. Mutter's Opinions

Arredondo asserts that the ALJ improperly rejected Dr. Mutter's opinions, such as her evaluation that Arredondo's "ability to function is currently severely impaired by his mood symptoms, as well as anxiety, and likely underlying ADHD." AR 1508. The opinions of treating physicians are typically given more weight than the opinions of doctors who do not treat the claimant. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject [the treating physician's] opinion without providing specific and legitimate reasons supported by substantial evidence in the record." *Id.* (internal quotation marks omitted). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* "However, '[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" *Bray*, 554 F.3d at 1228 (quoting *Thomas*, 278 F.3d at 957).

The Court finds that the ALJ appropriately relied on the records of Dr. Kollath, who examined Arredondo and reviewed his medical records. "If the record would support more than one rational interpretation, we defer to the ALJ's decision." *Bayliss*, 427 F.d at 1214 n.1. Here, Dr. Mutter's findings are contradicted by other treating physicians. "Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." 20 C.F.R. § 404.1527(c)(4). Dr. Mutter stated that Arredondo had poor-to-no abilities to maintain attention and concentration and had poor-to-no abilities to understand, remember, or carry out simple job instructions. AR 961. However, treating physician Dr. Alimasuya wrote of Arredondo: "[c]ognitive functioning and fund of knowledge is [sic] intact and age appropriate.

12

Short and long term memory are intact . . . . Social judgment appears intact. There are no signs of hyperactive or attentional difficulties. Mr. Arredondo's behavior in the session was cooperative and attentive with no gross behavioral abnormalities." AR 944. In another session, Dr. Alimasuya found Arredondo fully cooperative with cognitive functioning intact, short and long term memory intact, "as is ability to abstract and do arithmetic calculations. This patient is fully oriented." AR 756. Moreover, the record shows that continuing Arredondo's continuing medical treatment was efficacious. Arredondo himself described his response to medications as "good" to Dr. Kollath. AR 905. Furthermore, Arredondo reported no side effects to his medications to Dr. Alimasuya, AR 943, and "denie[d] all psychiatric problems" to Dr. Cerda, AR 950.

Moreover, the ALJ properly found that Arredondo demonstrated abilities consistent with his RFC. *See Hensely v. Colvin*, 600 Fed. App'x 526, 527 (9th Cir. 2015) ("[T]he ALJ reasonably determined that Dr. Mabee's opinion was inconsistent with Hensley's reported daily activities, which included attending to personal care, cooking, cleaning, shopping for groceries, taking the bus and swimming for exercise."). Though Dr. Mutter wrote that Arredondo had poor-to-no abilities to deal with work stress or function independently, AR 961, Arredondo had adapted to financial losses by renting his home out and selling items, AR 904-05. Additionally, Arredondo had taken charge of his medical care by communicating with his medical providers over the internet. *See, e.g.*, AR 1113-18.

Arredondo attacks much of the Commissioner's arguments in the briefing as *post hoc* reasoning that is not found within the bounds of the ALJ's opinion. However, the ALJ clearly specified that Dr. Mutter's "dire assessments" are "inconsistent with the claimant's responsiveness to treatment absent alcohol and with medication compliance." AR 31. Moreover, the ALJ cited the fact that Dr. Mutter did not have a longitudinal history of treating Arredondo as another reason why Dr. Mutter's evaluation was given little weight. *Id.* As aforementioned, there is plenty of evidence in the record that Arredondo's responsiveness to medication was good. Moreover, although Arredondo argues that Dr. Mutter had a better longitudinal view of his treatment than Dr.

Kollath, who only saw Arredondo once, Dr. Mutter's medical assessment of ability to do work-related activities (mental) report gives no indication that Dr. Mutter consulted with Arredondo's other medical providers. For instance, Dr. Mutter did not write that she had access to records from other treating medical providers such as Drs. Alimasuya or Cerda.

In sum, the ALJ did not improperly reject Dr. Mutter's opinions. Rather, the ALJ gave reasons why other medical providers' documents were more reliable and believable. Per *Bayliss*, if there is more than one rational interpretation of the evidence, the Court must defer to the ALJ. 427 F.3d at 1214 n.1. The Court next discusses the limitations propounded to the VE.

### 2. Whether the ALJ Failed to Propound to the VE All of Arredondo's Limitations

Arredondo claims that the hypothetical posed to the VE is inadequate as it fails to mention "impairment of [Arredondo's] ability to relate to managers, coworkers, or the public, or inability to behave in an emotionally stable or predictable manner as reported by Dr. Mutter . . . ." Mot. at 16. However, an ALJ need not include every proposed limitation in a hypothetical posed to a VE. *Copeland v. Bowen*, 861 F.2d 536, 540 (9th Cir. 1988). "Rather, the ALJ is 'free to accept or reject these restrictions . . . as long as they are supported by substantial evidence.'" *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989) (quoting *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1986)). As discussed above, the ALJ afforded little weight to Dr. Mutter's evaluation because of conflicting medical testimony by treating providers such as Drs. Alimasuya and Cerda. The ALJ accorded more weight to the records of Drs. Alimasuya and Cerda, which were supported by substantial evidence. For instance, Dr. Alimasuya wrote of Arredondo: "[c]ognitive functioning and fund of knowledge is [sic] intact and age appropriate. Short and long term memory are intact . . . . Social judgment appears intact. There are no signs of hyperactive or attentional difficulties. Mr. Arredondo's behavior in the session was cooperative and attentive with no gross behavioral abnormalities." AR 944. Arredondo himself described his response to medications as "good" to Dr. Kollath. AR 905. Furthermore, Arredondo reported no side effects to his medications to Dr. Alimasuya, AR 943, and "denie[d] all psychiatric problems" to Dr. Cerda,

14

AR 950. Thus, the ALJ's hypothetical to the VE was not inadequate as it properly included all limitations that the ALJ found to be supported by substantial evidence. The Court next discusses whether the ALJ's rationales for rejecting Arredondo's testimony are inadequate.

### 3. Whether the ALJ's Reasons for Rejecting Arredondo's Statements are Inadequate

Arredondo argues that the ALJ's reasons for rejecting his testimony are inadequate. Arredondo focuses on a few findings in the ALJ's decision: the discrepancy in Arredondo's evidence regarding his alleged onset of disability, his history of drinking, and the fact that Arredondo's subjective complaints were not consistent with the overall record.

When there is no affirmative evidence of malingering, as is the case here, instead of reviewing for substantial evidence, the ALJ's reasons for rejecting a claimant's testimony about the severity of his symptoms must be "clear and convincing." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). When reviewing for clear and convincing reasons to reject a claimant's testimony, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). The Court finds that the ALJ's reasons for rejecting Arredondo's testimony about the severity of his symptoms, AR 29-30, are clear and convincing.

First, in regard to Arredondo's alleged lack of credibility concerning the date of the alleged onset of disability, the ALJ cites the fact that "on April 22, 2014, the claimant was placed on modified duty phone work despite not working for the past 3 weeks due to his allegations of a total inability to work." AR 29. Although it is true that Arredondo told Dr. Alimasuya that he felt unable to do phone work, AR 751, it is nonetheless true that Arredondo returned to work after Arredondo's claimed disability onset date of April 8, 2014, AR 417. Arredondo's return to work despite his alleged disability undermines Arredondo's claim to Dr. Alimasuya that Arredondo felt unable to even do work on the phone. Moreover, the ALJ did not reject Arredondo's testimony on this ground alone.

Second, the ALJ also references Arredondo's visit to the emergency room on June 18,

15
Case No. 18-CV-04262-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

2014 for side effects of binge drinking. AR 29. However, unlike what Arredondo argues, the ALJ never cites binge drinking as a particular reason to doubt Arredondo's credibility. Rather, the ALJ cites the physician's written records from the emergency room visit, which note that Arredondo was "[n]egative for behavioral problems and agitation." AR 710.

Moreover, the ALJ found that Arredondo's conflicting accounts of his alcohol abuse undermined the reliability of his claims. AR 30. Pursuant to federal regulations, "[w]e will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence . . . ." 20 C.F.R. § 404.1529(c)(4). On April 29, 2015, Arredondo reported to Dr. Kollath that he last drank alcohol in approximately April 2014. AR 928. However, on August 20, 2015, he told Dr. Fusco at Kaiser in Richmond, California, that he had been sober for the past two years. AR 928. The Ninth Circuit has held that conflicting reports of drug and alcohol use is an indicator that the claimant is not a reliable source of information. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Thus, the ALJ's basis for doubting Arredondo's credibility based on conflicting reports of his sobriety is based on clear and convincing reasons articulated in the ALJ's opinion, as required per *Trevizo*. *See, e.g.*, *Trevizo*, 871 F.3d at 678 (holding that the ALJ's reasons for rejecting a claimant's testimony must be "clear and convincing").

Third, the ALJ writes:

> As noted in the decision, the claimant's subjective complaints and statements were not entirely consistent with the overall record. While he has severe impairments, he retains the ability to perform sedentary work as reflected in the above residual functional capacity assessment.

Arredondo claims that the "ALJ made a decision and then searched the record for any imprecision, apparent contradiction, or statement which was not 'entirely consistent with the overall record,' to provide a rationale of rejecting Mr. Arredondo's testimony." Br. at 21. Specifically, Arredondo "alleged depressed mood, sleep deprivation, [and] lack of focus and concentration." AR 30. However, the ALJ set forth specific reasons explaining why he concluded

16
Case No. 18-CV-04262-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

that Arredondo's allegations were not consistent with the overall record. For instance, the ALJ cites Dr. Kollath's evaluation, writing that "[t]he doctor assessed [that] the claimant had no restriction in the ability to follow simple instructions, follow complex/detailed instructions, maintain adequate pace or persistence to perform one or two-step simple repetitive tasks with mild restriction in completing complex tasks. He had no restriction in the ability to maintain adequate attention/concentration and to adapt to changes in job routine." AR 30.

The ALJ also found that "with conservative medication management and continuous adherence to medication," Arredondo can function without "significant deficits." *Id.* This finding is supported by significant amounts of evidence in the record. Arredondo described his response to medications as "good" to Dr. Kollath. AR 905. Arredondo reported no side effects to his medications to Dr. Alimasuya, AR 943, and "denie[d] all psychiatric problems" to Dr. Cerda, AR 950.

In sum, the ALJ's findings in rejecting Arredondo's subjective complaints are clear and convincing. *See, e.g.*, *Lester*, 81 F.3d at 834 ("[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."). The ALJ has given clear and convincing reasons, supported by the record, which cast into doubt Arredondo's subjective complaints about the severity of his symptoms. The Court next discusses whether remand is warranted in order for the ALJ to consider new evidence by Drs. Kanagui-Munos and Lichtmacher.

### 4. Whether the Court Should Remand to the ALJ for Consideration of New Evidence by Drs. Kanagui-Munoz and Lichtmacher

Arredondo requests remand for the ALJ to consider additional evidence from Drs. Kanagui-Munoz and Lichtmacher. The Appeals Council, in denying review, considered this additional evidence submitted by Drs. Kanagui-Munoz and Lichtmacher. "[W]hen a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported

17

by substantial evidence." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012).

Arredondo submitted to the Appeals Council a mental impairment questionnaire prepared by Drs. Kanagui-Munoz and Lichtmacher. AR 14-18. The questionnaire's findings are reminiscent of Dr. Mutter's evaluation of Arredondo. For instance, the questionnaire notes that Arredondo has "[s]ignificant deficits in complex attention; executive function; learning and memory; language; perceptual-motor, or social cognition." AR 15. It also notes that Arredondo has "extreme" limitations in sustaining "an ordinary routine and regular attendance at work." AR 16. Though this newly provided evidence bolsters Dr. Mutter's opinion, it nonetheless does not undermine the ALJ's opinion, which is supported by substantial evidence. As discussed at length above, the ALJ found that other medical records revealed that with consistent medication management and abstention from alcohol, Arredondo's condition would improve. Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Morgan*, 169 F.3d at 599. Here, the evidence is certainly susceptible to more than one rational interpretation as there are conflicting medical opinions. The ALJ has adequately cited reasons why he chose to credit the records of, for instance, Dr. Kollath. AR 31 ("[T]he above residual function capacity assessment is supported by giving great weight to the opinion from Dr. Kollath because it is consistent with the record as a whole and supported by an explanation."). Therefore, the Court finds that the ALJ's opinion is supported by substantial evidence, even in light of this new evidence from Drs. Kanagui-Munoz and Lichtmacher. The Court declines to remand to the ALJ for consideration of this new evidence.

## IV.     CONCLUSION

For the foregoing reasons, the Court DENIES Arredondo's motion for summary judgment and GRANTS the Commissioner's cross-motion for summary judgment.

**IT IS SO ORDERED.**

Dated: January 21, 2019

********

LUCY H. KOH
United States District Judge

Case No. 18-CV-04262-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT